Duquesne Light Company *v.* Pittsburgh Railways Company, Appellant.

Argued April 26, 1963. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

reargument refused December 18, 1963.

*Clyde A. Armstrong*, with him *Charles M. Thorp, Jr., Frank J. Gaffney*, and *Thorp, Reed & Armstrong*, for appellant.

*Edmund K. Trent*, with him *Thomas J. Munsch, Jr.*, and *Reed, Smith, Shaw & McClay*, for appellee.

OPINION BY MR. JUSTICE COHEN, October 9, 1963:

No. 26 and No. 27 are appeals from the denial of two separate petitions to open judgment.

On June 5, 1933, appellant Pittsburgh Railways Company (Railways) and appellee Duquesne Light Company (Duquesne) entered into an agreement for the lease to Railways of certain substations and equipment necessary to convert electric power supplied by Duquesne. At that time, Railways and Duquesne were affiliated companies. The lease which was terminable upon 60-days' notice provided for an annual rent of $220,600.43.[1]

---

[1] The lease also contained a formula for determining the appropriate adjustment in rent where new property was included or old property discarded.

Pursuant to a warrant of attorney contained in the lease, Duquesne on December 31, 1958, confessed judgment in the amount of $95,843.31, the rent due for the last nine months of 1958. Railways denied that this amount was owing and asserted, on the contrary, that it had overpaid rent in the sum of $414,530. Duquesne's claim and Railways' counterclaim were accordingly submitted to a board of three arbitrators as provided in the lease.

Before the arbitrators, Railways relied on the following clause of the lease: "The rental herein set forth includes a return to Duquesne for interest, *amortization*, insurance and maintenance except that insofar as the rental payment relates to land no return to Duquesne is made to cover amortization, insurance and maintenance. In making these computations the following percentages based on the costs of the properties have been used with reference to the type of property indicated, namely, land 7% per year, buildings 9.7% per year, high tension switching equipment 11.5% per year, and utilization equipment 10.7% per year." (Emphasis supplied).

Railways argued that the purpose of this agreement between the affiliated companies was to have Duquesne finance the establishment of the conversion system; that Duquesne—as evidenced by the use of the term "amortization"—was to be reimbursed only for the cost of its investment and was not to receive a profit therefrom; and that since the amortization periods had expired,[2] the rent should be reduced and Railways should recover its previous overpayments. Duquesne denied that this was the understanding of

_____

[2] Railways claimed that the amortization periods—and hence the rent due therefor—expired for high-tension switching equipment on December 31, 1948, for utilization equipment on December 31, 1953, and for buildings on December 31, 1958.

the parties and maintained that the stated annual rent was to continue until the lease was terminated.

The arbitrators, by a vote of two to one, agreed with Duquesne's interpretation of the lease and refused to open the judgment. On appeal to the Court of Common Pleas of Allegheny County this decision was affirmed on September 5, 1962. On September 25, 1962, Railways presented to the common pleas court a second petition to open judgment this time asserting that the lease was void and unenforceable because of Duquesne's failure to file it with the Public Utility Commission and to secure approval thereof as provided in the Public Utility Law. The court below dismissed this petition on the ground that Railways could not now raise the defense of illegality. These appeals followed.

Turning first to appeal No. 27, the first petition to open judgment, we hold that the court below correctly affirmed the decision of the arbitrators.

On the matter of arbitration, the lease provides that all disputes shall be submitted to a board of three arbitrators and that the decision of any two arbitrators "shall be final and conclusive upon both parties as to all questions of fact involved in such arbitration." The present controversy resolves itself into a determination of whether the parties intended that Duquesne should make a profit from the lease agreement. On this question, there was conflicting oral testimony. In addition, each side presented corroborating evidence to support its position.[3] In this state

---

[3] Evidence corroborating the position of Duquesne included the fact that the lease contained a 60-day termination period without any obligation upon Railways to pay the unamortized balance upon termination; the fact that the lease contained no provision for a reduction in sales price by the amount already paid for amortization when rented machinery was sold to Railways; the fact that Railways continued to make payments for amortization

of the record, we conclude that the parties by the arbitration agreement intended the arbitrators' decision on the submitted question to be final. Hence we affirm this appeal without indicating how we would have decided the controversy in the absence of the arbitration agreement.

Turning next to the second petition to open judgment (No. 26), we hold that the court below properly dismissed this petition on the basis of res judicata.

It is hornbook law that the final determination by a court of competent jurisdiction settles not only the defenses actually raised, but also those which might have been raised. See *Jones v. Costlow*, 354 Pa. 245, 253-54, 47 A. 2d 259, 263-64 (1946) and *Federal Land Bank of Baltimore v. Putnam*, 350 Pa. 533, 538, 39 A. 2d 586, 588, cert. denied, 324 U.S. 882 (1944). The defense of illegality should have been raised in the first petition to open judgment. Although Railways' second petition alleges that it first discovered these facts while searching the records of the Public Utility Commission in the course of preparing its appeal to this Court from the denial of the first petition, no explanation is offered why these alleged violations of the Public Utility Law were not detected and set forth in the first petition. The res judicata doctrine is designed to prevent the very situation which would result if appellant's second petition were granted, namely, the injection of a new issue into the case after almost four years of litigation.

Railway argues that an exception should be made to the application of the res judicata doctrine where

---

after the applicable amortization periods had expired; and, perhaps the most persuasive, the unlikely possibility that skilled attorneys would attempt to accomplish the result claimed by Railways by merely referring to the term "amortization" instead of expressly stating that the rent should be reduced when the property had been completely amortized.

the defense of illegality is involved. We neither know of such an exception nor make one here. It is true that a court may allow this defense to come into a proceeding where it has not arisen in the pleadings, so long as facts giving rise to the illegality of the transaction sued upon appear on the face of the record. See e.g., *Norristown Ford Co. v. Metropolitan Auto Dealer, Inc.*, 183 Pa. Superior Ct. 645, 132 A. 2d 725 (1957). This is not to say that the issue of illegality having been ignored in the pleadings or subsequent stages of an original proceeding may be raised in a subsequent action. The doctrine of res judicata has full force and effect under such circumstances.

Accordingly, the two orders dismissing the petitions to open judgment are affirmed.

---

CONCURRING OPINION BY MR. JUSTICE BELL:

I would affirm the Orders denying the petitions to open the judgments because there was no clear abuse of discretion or error of law. I believe that res adjudicata does not apply. See *Fogel Refrigerator Company v. Oteri*, 398 Pa. 82, 85-86.