581 F.2d 62
 RIVERSIDE MEMORIAL MAUSOLEUM, INC. t/a Delaware Valley
Memorial Center, L. Blumberg's Son, Inc. and Helen
Rothchild Blumberg, Appellants,
v.
UMET TRUST, an Unincorporated California Business Trust and
Sonnenblick-Goldman Corporation, Appellees.
 No. 77-2216.
 United States Court of Appeals,
Third Circuit.
 Argued May 2, 1978.
Decided June 13, 1978.
As Amended Sept. 5, 1978.
 
 Lawrence G. Sager, New York City, for appellants; Linda J. Silberman, New York City, of counsel.
 Nathan B. Feinstein, Howard J. Kaufman, Cohen, Shapiro, Polisher, Shiekman & Cohen, Philadelphia, Pa., for appellee UMET Trust.
 Jon A. Baughman, Irwin A. Popowsky, Pepper, Hamilton & Scheetz, Philadelphia, Pa., for appellee Sonnenblick-Goldman Corp.
 Before HUNTER and WEIS, Circuit Judges and COHEN, District Judge.*
 OPINION OF THE COURT
 WEIS, Circuit Judge.
 
 
 1
 This appeal presents two unrelated issues. The first is whether a real estate investment trust (REIT) may be treated as a corporation for diversity jurisdictional purposes. We echo the district judge's answer of no. The second questions the extent to which proceedings to open a state court judgment are determinative of issues raised by the same parties in a federal court suit. After a study of state procedural law, a subject important to many, but not a fillip for every man, we conclude that the district court erred in applying res judicata to the whole of the plaintiffs' case and limit the preclusion to only part of their claims.
 
 
 2
 UMET Trust, an unincorporated California real estate investment trust, loaned the plaintiffs, Riverside Memorial Mausoleum, Inc., L. Blumberg's Son, Inc., and Helen Rothchild Blumberg, the sum of $3,922,000 on July 25, 1973. The loan was secured by various security instruments, including a mortgage on plaintiffs' property. The funds were to be used for the construction of a mausoleum containing 5,000 crypts. The parties agreed that if Riverside were able to sell 5,000 crypts by January 25, 1974, UMET would lend additional funds so that the total loan would be $7,100,000. Plaintiffs did not meet the sales requirement and did not receive the additional funding.
 
 
 3
 A broker, codefendant Sonnenblick-Goldman, arranged the loan and was to receive a commission for its work. At the closing on July 25, 1973, Sonnenblick-Goldman received one-half of its commission in cash and the remainder in the form of a judgment note due January 24, 1974. The note was not paid on the due date, and Sonnenblick-Goldman, utilizing the warrant of attorney forming part of the note, confessed judgment for $80,247.50. The judgment was docketed in the Court of Common Pleas of Philadelphia County, Pennsylvania on March 21, 1974.
 
 
 4
 Pursuant to Pennsylvania practice, the Riverside parties filed a petition to open and strike the judgment, alleging Sonnenblick-Goldman had agreed that its commissions would be paid by UMET, and because the commission was to be based upon the amount actually received by Riverside, rather than the total commitment, the broker had been paid in full at the closing. After consideration of briefs, the deposition of Helen Blumberg (a Riverside principal), and argument, on November 21, 1974 the common pleas court denied the petition.
 
 
 5
 While this litigation was in progress, UMET began an action of mortgage foreclosure against the Riverside parties, and in December, 1974, began a second suit, this one based on the mortgage note itself. Judgment was entered in favor of UMET in both cases. Soon thereafter, the Riverside parties took the offensive and filed an equity action in the common pleas court against UMET and Sonnenblick-Goldman. The complaint alleged, Inter alia, that the defendants had conspired to prevent Riverside from selling its property by interfering with its negotiations with prospective purchasers so that the defendants could take the property at sheriff's sale and then sell to the same parties previously contacted by Riverside.
 
 
 6
 The common pleas court addressed all of the litigation between the parties in a consent order of January 3, 1975, directing that the equity conspiracy action be stayed and the sheriff's sales proceed on the judgments for the mortgage balance and broker's commission. Before the sheriff's sales could proceed, however, and despite their consent to the common pleas court order, the Riverside principals filed petitions in the United States District Court for Eastern Pennsylvania under Chapter XI of the Bankruptcy Act.[1]
 
 
 7
 In April, 1975, the Riverside plaintiffs filed the present civil action in the district court, setting forth essentially the same grounds described in the common pleas equity suit. In addition to the conspiracy, the complaint alleged that the broker had not been entitled to additional commission for the same reasons asserted in the state court petition to open Sonnenblick-Goldman's confessed judgment.
 
 
 8
 The district court granted summary judgment in favor of the defendants on the ground of res judicata. On appeal, we vacated and remanded for findings of fact on the jurisdictional issue of whether UMET Trust could be treated as a corporation for diversity purposes.[2]
 
 
 9
 On remand, the district court held a hearing and determined that since UMET was a real estate investment trust (REIT) and some of its investors were citizens of Pennsylvania, complete diversity between plaintiffs and UMET did not exist. Accordingly, the case as to UMET was dismissed. The court retained jurisdiction over Sonnenblick-Goldman and reinstated summary judgment in its favor. We agree that there was a lack of diversity between plaintiffs and the UMET Trust.
 
 I.
 
 10
 In Fox v. Prudent Resources Trust, 382 F.Supp. 81, 92-93 (E.D.Pa. 1974), the District Court for Eastern Pennsylvania rejected a contention that a New York business trust should be treated as a corporation for business purposes. While recognizing the trust shares were traded on a major stock exchange and the trust's managerial structure was quite similar to a corporation, the court held that United Steelworkers v. R. H. Bouligny, Inc.,382 U.S. 145, 86 S.Ct. 272, 15 L.Ed.2d 217 (1965), required that the entity be treated as an unincorporated association rather than a corporation for jurisdictional purposes under 28 U.S.C. § 1332. The Fox rationale was followed in Larwin Mortgage Investors v. Riverdrive Mall, Inc., 392 F.Supp. 97 (S.D.Tex.1975) (REIT); Chase Manhattan Mortgage & Realty Trust v. Pendley, 405 F.Supp. 593 (N.D.Ga.1975) (business trust); Lincoln Associates, Inc. v. Great American Mortgage Investors, 415 F.Supp. 351 (N.D.Tex.1976) (REIT).
 
 
 11
 In Larwin, supra, the court pointed out that the REIT had assumed that form because of the attendant tax advantages. Here, too, tax considerations led to the similar choice by UMET. It filed a deed of trust in California, has a perpetual existence, and is managed by elected trustees who select a chairman, secretary, and various committees. The trustees function in much the same way as a corporate board of directors. In addition, the trust has a seal and its shares are traded on the American Stock Exchange. But while UMET closely resembles a corporation, it is not actually one nor does it desire to be one, considering the tax consequences. Furthermore, as the district court found, a REIT does not fit comfortably within the usual concept of a trust.
 
 
 12
 The policy reasons which impel us to adopt a narrow and literal view of the diversity jurisdictional statute are set out at length in Carlsberg Resources Corp. v. Cambria Savings & Loan Association, 554 F.2d 1254 (3d Cir. 1977). That case determined that a limited partnership cannot be considered a corporation for diversity purposes but must be viewed as an unincorporated association. For jurisdictional purposes, there is no persuasive difference between the limited partnership there composed of some 1500 investors and UMET in this case. Consequently, we conclude, as did the district court, that we must look to the citizenship of the UMET investors and not simply that of the trustees. Applying that rule demonstrates that there is no diversity between the Pennsylvania plaintiffs and all of the UMET investors. Accordingly, the dismissal of UMET was proper.
 
 II.
 
 13
 Conscious of the weakness of their jurisdictional stance and faced with the undesirable prospect of proceeding against only one of two alleged conspirators, the plaintiffs contended in the district court that if UMET were dismissed, the same disposition should apply to Sonnenblick-Goldman. Thus, plaintiffs would be free to resume activity in the long dormant equity suit in common pleas court against both UMET and Sonnenblick-Goldman. The district judge, however, refused to dismiss the claims against Sonnenblick-Goldman, rejecting plaintiffs' assertion that they had the right to choose their forum and control the litigation in these circumstances. In the district judge's view, so long as the dropped defendant was not an indispensable party, jurisdiction could be retained over the diverse defendant. We agree that the district court was granted such discretion by Fed.R.Civ.P. 21, which provides in part:
 
 
 14
 "Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just. . . ."
 
 
 15
 The court recognized that its authority was hedged by Fed.R.Civ.P. 19(b) which requires a determination "whether in equity or good conscience" the cause should proceed as to the parties before it or be dismissed because of the absence of an indispensable party. Having determined that UMET was not an indispensable party, the district court properly exercised its discretion in proceeding to adjudicate the case as to Sonnenblick-Goldman.[3] Jett v. Phillips & Associates, 439 F.2d 987 (10th Cir. 1971); Girardi v. Lipsett, Inc., 275 F.2d 492, 494 n. 1 (3d Cir.), Cert. denied, 364 U.S. 821, 81 S.Ct. 56, 5 L.Ed.2d 50 (1960). See also Ralli-Coney, Inc. v. Gates, 528 F.2d 572, 575 (5th Cir. 1976); 7 C. Wright & A. Miller Federal Practice & Procedure § 1685 (1972).
 
 III.
 
 16
 Thus far we have found no error in the district court's disposition of this case. We turn now to the issue of res judicata; here we do not completely agree with the trial judge's conclusion that res judicata applies to all the claims against Sonnenblick-Goldman.
 
 
 17
 Res judicata is founded on the sound principle of judicial administration that there should be an end to litigation. The recitation of the involved maneuvering of the parties in both state and federal forums makes it apparent that this case is a particularly appealing one for the application of the doctrine. It is with some reluctance, therefore, that we conclude that the matter is not yet at an end.
 
 
 18
 The complaint which the plaintiffs filed in the district court consists of four counts. The first recites that UMET and Sonnenblick-Goldman engaged in a conspiracy to defraud the plaintiffs by filing the actions of mortgage foreclosure and confessing judgment on the broker's note. The second alleges the conspiracy to obtain and resell the property; the third and fourth specify elements of the damages sought.
 
 
 19
 In count one, Sonnenblick-Goldman is alleged to have agreed that its commission, if due, would be paid by UMET and it was only to be paid on the basis of the amount received by Riverside. These allegations are the same ones included in Riverside's petition to open the confessed judgment which were rejected by the common pleas court. The district court observed that the validity of the Sonnenblick-Goldman judgment note and the UMET mortgage were precisely the same matters litigated in the state court and determined adversely to the Riverside parties. We agree that res judicata applies and summary judgment was properly entered as to count one.
 
 
 20
 When the prior judgment has been entered on the merits, the scope and application of res judicata are determined by the law of the rendering state in this instance, Pennsylvania. Clyde v. Hodge, 413 F.2d 48 (3d Cir. 1969). See 28 U.S.C. § 1738.[4] The Supreme Court of Pennsylvania in discussing res judicata has said:
 
 
 21
 "The rule should not be defeated by minor differences of form, parties or allegations, when these are contrived only to obscure the real purpose a second trial on the same cause between the same parties. The thing which the court will consider is whether the ultimate and controlling issues have been decided in a prior proceeding in which the present parties actually had an opportunity to appear and assert their rights. If this be the fact, then the matter ought not to be litigated again, nor should the parties, by a shuffling of plaintiffs (or, as in this case, defendants) on the record, or by change in the character of the relief sought, be permitted to nullify the rule." Helmig v. Rockwell Manufacturing Co., 389 Pa. 21, 131 A.2d 622, 627 (1957), Citing Hochman v. Mortgage Finance Corp., 289 Pa. 260, 263, 137 A. 252, 253 (1927).
 
 
 22
 First we must consider what was decided in the common pleas court, and a brief discussion of the Pennsylvania practice of confession of judgments and petitions to open will be helpful in understanding the scope of the litigation there. Although the practice of confessing judgments on a warrant of attorney forming part of a promissory note was sharply curtailed as to low income parties by the Supreme Court in Swarb v. Lenox, 405 U.S. 191, 92 S.Ct. 767, 31 L.Ed.2d 592 (1972), it continues to be a useful device in transactions between corporate and commercial entities. Cf. D. H. Overmyer v. Frick Co., 405 U.S. 174, 92 S.Ct. 775, 31 L.Ed.2d 124 (1972). After the confession, a defendant may petition to open or strike the judgment. Pennsylvania Rule of Civil Procedure 2959(a) provides that all grounds for relief "whether to strike off the judgment or to open it must be asserted in a single petition"; and under subsection (c), "a party waives all defenses and objections which he did not include in his petition or answer." Testimony, depositions, admissions or other evidence may be produced and "if evidence is produced which in a jury trial would require the issues to be submitted to the jury, the court shall open the judgment."[5] This latter provision has the effect of requiring an adjudication of the defenses supported by evidence. If they should be decided by a jury, the court must open the judgment.
 
 
 23
 Thus, the state proceedings are much more than simply a judgment entered by confession. When there is a proceeding to open the judgment, such as occurred here, the litigation becomes an adversary proceeding in which there is an adjudication upon the merits of the defenses raised. Moreover, in addition to the waiver provision of Pa.R.Civ.P. 2959(c), Pennsylvania decisions have held that res judicata bars consideration in a second suit of defenses which a party might have, but did not raise in his original petition to open. Nevling v. Commercial Credit Co., 156 Pa.Super. 31, 39 A.2d 266 (1944). See also Duquesne Light Co. v. Pittsburgh Railways Co., 413 Pa. 1, 5, 194 A.2d 319, 321 (1963), Cert. denied, 377 U.S. 924, 84 S.Ct. 1221, 12 L.Ed.2d 215 (1964).
 
 
 24
 The deposition of Helen Blumberg reveals that she and her attorney discussed the filing of a claim corresponding to the assertions made in count one at about the time Sonnenblick-Goldman confessed judgment on its note. It is apparent, therefore, that while the petition to open the judgment was pending, the plaintiffs considered the defense of conspiracy to confess judgment for a sum not justly due because of lack of consideration. But the common pleas court adjudicated the validity of the judgment note and its consideration in favor of Sonnenblick-Goldman. Riverside cannot evade that finding by simply adding allegations of conspiracy to the very same activity passed upon in the state action. Denckla v. Maes, 313 F.Supp. 515 (E.D.Pa.1970). Since count one of the federal complaint cannot stand unless the confessed judgment was invalid, a matter adjudicated to the contrary by the state court, we conclude that res judicata was properly applied and bars further consideration of that count. The ultimate and controlling issues in count one had been decided in the prior proceeding. Helmig v. Rockwell,supra.
 
 
 25
 Count two, however, is in a different posture. It alleges that UMET and Sonnenblick-Goldman
 
 
 26
 "on repeated occasions have maliciously interfered with and frustrated negotiations in efforts on the part of plaintiffs to sell the said property to prospective purchasers thereof, and defendants have further made contact with such prospective purchasers on their own behalf in an effort to induce such purchasers to purchase the property from defendants at a lower price than that offered by plaintiffs.
 
 
 27
 "Such acts of the defendants have effectively prevented the completion of negotiations by plaintiffs for the sale of said property to their prospective purchasers at a consideration of at least $12,000,000, which sum, if realized would have reflected a substantial profit to the plaintiffs after satisfaction of liens. . . ."
 
 
 28
 The assertions in this count do not go to the validity of the confessed judgment or the promissory note but to actions of the defendants independent of those issues. Although the complaint is not a model of clarity, the parties were in agreement at oral argument that the allegations in count two were intended to refer to incidents occurring after judgment had been confessed on the note. Count two is not a defense to the note but is a separate claim or cause of action. Its adjudication was not necessary to determine the validity of the confessed judgment. If the plaintiffs are able to establish such a claim under state law, they may be able to recover against the defendants despite satisfaction of the confessed judgment.
 
 
 29
 In determining whether plaintiffs' claims here are barred by res judicata, we must distinguish between "counterclaims" and "defenses." A counterclaim may entitle the defendant in the original action to some amount of affirmative relief; a defense merely precludes or diminishes the plaintiff's recovery. Although the facts underlying some defenses might also support a counterclaim, not all counterclaims are valid defenses. The two concepts are distinct and must be kept so.
 
 
 30
 Unlike the federal procedure, Pennsylvania does not have a compulsory counterclaim rule. In Martin v. Poole, 232 Pa.Super. 263, 270, 336 A.2d 363, 367 (1975), the Pennsylvania Superior Court followed Restatement of Judgments § 58 (1942):
 
 
 31
 "Where the defendant does not interpose a counterclaim although he is entitled to do so, he is not precluded thereby from subsequently maintaining an action against the plaintiff on the cause of action which could have been set up as a counterclaim."
 
 
 32
 See also 2 Goodrich-Amram 2d, Pa.Procedural Rules Service § 1031(a):1 (1977). Moreover, Pennsylvania practice does not permit the filing of a counterclaim for an unliquidated amount in a petition to open a judgment if the counterclaim is not directly related to the cause of action on which the plaintiff's judgment has been entered. See Harrison v. Galilee Baptist Church, 427 Pa. 247, 234 A.2d 314 (1967); Harrison v. Stoeckert, 369 Pa. 143, 85 A.2d 154 (1952); G.A.C. Credit Corp. v. Acme Accordion Studios, Inc., 220 Pa.Super. 148, 286 A.2d 678 (1971). See also 2 Goodrich-Amram, Supra, § 1031(a):1 n. 35. A counterclaim for tortious interference with a contract cannot be set up as a defense unless the act is directly connected with performance of the contract, 2 Goodrich-Amram, Supra, § 1031(a):1. It cannot be said, therefore, that the conspiracy to interfere with the sale should have been raised in the petition to open. Indeed, it appears that the allegation could not have been used as a defense. Since it is a separate claim which must be separately adjudicated, res judicata does not preclude it.
 
 
 33
 Nor is the doctrine of collateral estoppel applicable. Pennsylvania follows the general rule set out in § 68(1) of Restatement of Judgments (1942) that an essential question of fact actually litigated and determined by a judgment is conclusive between the parties on a different cause of action.[6] See McCarthy v. Township of McCandless, 7 Pa.Cmwlth. 611, 618-19, 300 A.2d 815, 820 (1973). Unlike the situation with res judicata, however, the judgment is not conclusive as to issues which might have been, but were not litigated in the original action. Thus, we conclude that even if the count two conspiracy could have been raised in the petition to open, collateral estoppel would not bar the plaintiffs from asserting the claims in the subsequent district court suit.
 
 
 34
 Count three alleges that the defendants' actions have damaged the credit and good standing of the plaintiffs in the community, and count four claims punitive damages. Since all preceding averments are incorporated, counts three and four are directed to both of the first two counts. To the extent that three and four apply to one, they are barred by the res judicata ruling on that count. Insofar as three and four track count two, they should not have been included in the summary judgment.
 
 
 35
 The judgment of the district court will be affirmed insofar as it dismissed the case against UMET and was in favor of Sonnenblick-Goldman on count one. The judgment will be vacated insofar as it granted summary judgment for Sonnenblick-Goldman on counts two, three and four.
 
 
 
 *
 Honorable Mitchell H. Cohen, United States District Court for the District of New Jersey, sitting by designation
 
 
 [1]
 Although the filing of the bankruptcy action stayed the sheriff's sales, some months later, with consent of the bankruptcy court, the sales proceeded, resulting in deficiency judgments against the Riverside principals
 
 
 [2]
 This direction was incorporated in an unpublished per curiam opinion. Riverside Memorial Mausoleum, Inc., t/a Delaware Valley Memorial Center, L. Blumberg's Son, Inc. and Helen Rothchild Blumberg v. UMET Trust and Sonnenblick-Goldman Corp., Nos. 76-1600, 76-1601, 76-1602 (3d Cir. Filed Feb. 9, 1977)
 
 
 [3]
 The district court did retain the option to reconsider its ruling on dismissal if an appeal resulted in reversal of the res judicata decision
 
 
 [4]
 The holding in Hartman v. Time, 166 F.2d 127, 138 (3d Cir. 1947), Cert. denied, 334 U.S. 838, 68 S.Ct. 1495, 92 L.Ed. 1763 (1948), that the law and policy of the forum state governed may apply when the prior judgment was based on the statute of limitations, and not on the "merits." See 1B Moore's Federal Practice P 0.409(6)
 
 
 [5]
 Under former practice, the question of opening a judgment was entrusted to the discretion of the common pleas court. Amendments to the rules in 1973 (in effect when the note in this case was filed), however, mandate an opening by the trial court as a matter of law when the defendant establishes a jury issue. 8 Goodrich-Amram 2d, Pa.Procedural Rules Service § 2959:1 (1977)
 
 
 [6]
 We find no difference between federal and Pennsylvania law on collateral estoppel as applied to the facts in this case. See the discussion in Lynne Carol Fashions, Inc. v. Cranston Print Works Co., 453 F.2d 1177 (3d Cir. 1972)