Oliver T. CARR Jr., et al., Appellants,

v.

Evans ROSE, et al., Appellees.

No. 94–CV–729.

District of Columbia Court of Appeals.

Argued Sept. 28, 1995.

Decided Oct. 9, 1997.

William J. Utermohlen, with whom Richard A. Green was on the brief, Washington, DC, for appellants.

Paul R. Monsees, with whom David Barmak and James Sottile IV were on the brief, Washington, DC, for the Rose appellees, the Miskovsky appellees, and appellee Riordan.

Niccolo N. Donzella, with whom Charles S. Fax was on the brief, Washington, DC, for appellees Guinot, Lenzini, Greene and Jost.

J. Thomas Esslinger, Washington, DC, filed a brief for appellees Lieber and McGuinn.

Thomas C. Reed and Stanley R. Geary, Pittsburgh, PA, filed a brief for appellees Angel, Farrell, Geary, Ingram, Moore and Reed.

Before STEADMAN and RUIZ, Associate Judges, and PRYOR, Senior Judge.

STEADMAN, Associate Judge:

This appeal arises from years of effort on the part of appellants (collectively the "landlord") to recover damages for breach of a lease on office space after the tenants decided they no longer wished to occupy the leased space. The great bulk of the tenant appellees were not members of the law firm that executed the lease but rather of a subsequent "consolidated" law firm.

The principal question presented is whether the trial court properly dismissed the landlord's action in its entirety against the tenants on the ground that it is barred under principles of res judicata and collateral estoppel by a final order in a Pennsylvania probate proceeding. The Pennsylvania court had rejected what it determined to be a claim by the landlord against the assets of the probate estate of one of the tenants—a member of the consolidated law firm only—after ruling that the tenant was not liable under the lease agreement. The trial court held that the present claims are precluded by this former litigation. We reverse the trial court's dismissal of the action against those appellees who were members of the original law firm executing the lease. In all other respects, the order of the trial court is affirmed.[1]

## I. Background

We first describe the lease and the relation of the parties to it. We then recount the series of litigation moves that followed the asserted breach of the lease, with special attention to the Pennsylvania probate proceedings that the trial court in the District of Columbia determined to have preclusive effect on the instant action.

### A. The Lease

The landlord's claims are based on a ten-year commercial office space lease entered into in 1983 between the landlord and the original tenant, a law partnership named Chapman, Duff & Paul ("CDP" or "original tenant"). Under the lease, the members of

the law partnership were liable, but only to the extent of their respective "percentage interest[s] in the partnership assets of" the lessee. That limitation also applied to the members of any "successor partnership." The term "successor partnership" was defined to mean a partnership in which the members of the original tenant owned or controlled a majority interest.

In 1985, the original tenant and another law firm, Rose, Schmidt, Dixon & Hasley ("RSDH"), a Pennsylvania partnership with a Washington office, entered into an agreement to consolidate their operations. The members of the original tenant firm collectively owned less than a fifty percent interest in the consolidated operation; therefore, it would not be a "successor partnership" as that term was defined in the lease. The exact nature of the consolidation is disputed—members of the original tenant firm characterize the agreement as a merger, while members of the consolidated firm and its successor characterize it as a joint venture. Regardless of the characterizations, however, the consolidation agreement provided that "existing assets, liabilities and obligations of RSDH and CDP as of the close of business on February 28, 1985 shall be assumed by the [consolidated] Firm."

The Washington office of the newly consolidated firm, which called itself Rose, Schmidt, Chapman, Duff & Hasley, took up residence in the original tenant's office space in 1985 with the full knowledge of the landlord. The consolidated firm continued to occupy the space and pay rent until mid 1987, when, with six years still left on the lease term, it announced in a letter to the landlord that the firm had been "dissolved" and would be vacating the premises. In the same letter, the consolidated firm said that its business was "being wound up by Rose, Schmidt, Hasley & DiSalle," which it described as "formerly a part of" the consolidated firm. For the sake of clarity, we shall call Rose, Schmidt, Hasley & DiSalle the

---

1. We affirm the trial court's denial of summary judgment on the issue of the statute of limitations. The landlord does not contend that the lease was breached in 1985, when the consolidated firm took possession of the premises, but

instead in 1987, when the landlord stopped receiving rent payments. Because the landlord filed its complaints within three years from the time it stopped receiving rent, its claims are not barred by the statute of limitations.

"survivor firm." The survivor firm paid rent on the premises through September 30, 1987, at which point the space was vacated.

## B. The Litigation

As might have been expected, the foregoing led to a dispute concerning who owed whom what. According to an affidavit in the record, the landlord undertook settlement negotiations with counsel representing the members of the survivor firm. When those discussions proved unfruitful, in June 1989, the landlord notified opposing counsel of its intention to file suit and requested clarification regarding a list of partners of the survivor firm that counsel had previously provided, for the purpose of naming the appropriate defendants. On August 2, 1989, while the landlord was waiting for a response, members of the survivor firm brought an action in state court in Pittsburgh seeking a declaration that they were not liable on the lease. The landlord removed the case to federal court. The case was never decided because it was voluntarily dismissed, in 1993, by the members of the survivor firm.

At about the same time, the landlord learned of a second action in Pennsylvania, a probate proceeding in the Orphans' Court Division of the Court of Common Pleas in Pittsburgh, resulting from the June 1989 death of Harold R. Schmidt, who had been a name partner in both the consolidated firm and the survivor firm but not the original tenant. On August 7, 1989, the landlord, to preserve its rights in Schmidt's estate, filed a notice of its claim in the amount of $2,036,398 reflecting rents assertedly due under the lease.[2] In response, on August 11 the executrix of Schmidt's estate, represented by the survivor firm, filed a declaratory judgment action in the Orphans' Court to determine Schmidt's liability to the landlord under the

lease. The landlord removed that action to federal court. After her motion for remand to the Pennsylvania state court was denied, the executrix voluntarily dismissed the action in December 1989.

Meanwhile, on August 14, 1989, the landlord filed in the District of Columbia Superior Court one of the complaints in the consolidated cases from which this appeal arises. The complaint named thirty-two past and present members of the survivor firm, of whom twenty-six had been members of the consolidated firm, including Harold Schmidt's estate, and of whom one had also been a member of the original tenant. It also named twelve defendants who had been members of the consolidated firm, but not the survivor firm. Subsequently, in June of 1990, the landlord filed another complaint in the District of Columbia Superior Court, naming ten defendants who had been members of both the original tenant firm and the consolidated firm as well as six additional defendants who had been members of the consolidated firm only. At the landlord's request, the two actions were consolidated. Upon defendants' motion, these proceedings in the District were stayed pending resolution of the federal court action brought in Pennsylvania by the members of the survivor firm.

In January of 1990, Schmidt's executrix filed an accounting of the estate with the Pennsylvania Orphans' Court. The accounting provided for distribution of the estate to the legatees, without any provision for the estate's potential liability to the landlord.[3] If approved by the court after audit, that distribution would preclude the landlord's claim under the lease against the estate. The landlord, therefore, objected to the accounting and on January 17, 1990, filed a petition pursuant to 20 PA. CONS.STAT. § 3389 [4] re-

---

2. Pennsylvania law provides that "[n]o claimant shall have any claim against real property conveyed by a personal representative in distribution at his own risk ... unless such claimant, within one year after the decedent's death, files a written notice of his claim with the clerk." 20 PA. CONS.STAT. § 3532(b)(2) (1996). The landlord's notice stated only the amount, but not the basis for its claim.

3. The executrix had already distributed most of the estate's assets but in the absence of a court-approved accounting, that distribution was "at risk."

4. This statute provides in relevant part:

 When any claim not proved in the orphans' court division is being litigated in any other division or court, State of Federal, having jur-

questing that the Orphans' Court (1) order the return to the estate of $600,594 in estate assets already paid out in at-risk distributions, and (2) stay the audit of the accounting until the tenants' liability under the lease was resolved, either in the survivor firm's declaratory judgment action then pending in federal court in Pennsylvania or in the landlord's action pending in the District of Columbia.

After a settlement conference sponsored by the Orphans' Court proved unsuccessful, the court announced that it would entertain the claim itself. Not wishing to try its claim under the lease in that forum, the landlord denied having ever requested from the Orphans' Court any judgment against the estate, and furthermore filed a notice withdrawing its claim. On March 22, 1990, the court struck the withdrawal and directed that a trial be held.[5] The landlord failed to appear at trial, and, after receiving and considering evidence from only those contesting liability under the lease, the Orphans' Court issued an opinion dismissing the lease claim on the merits.

Specifically, the Orphans' Court found that "[t]here was no valid assignment of the Lease to the [consolidated firm] and, therefore, there is no liability of either the [consolidated firm] or the Schmidt Estate. The Lease was neither expressly assigned nor assumed by [the survivor firm] or the [consolidated firm] and no such assignment or assumption occurred by implication or by operation of law." The court concluded that the consolidated firm had been a tenant-by-sufferance between March 1, 1985 and Sep-

tember 30, 1987 pursuant to D.C.Code § 45–220 (1981), and that it had given the requisite thirty days notice of its intention to quit the premises leased pursuant to D.C.Code § 45–1404 (1981). As a result, Harold Schmidt, who had not been member of the original tenant law firm, could not be held liable under the lease. Accordingly, the court denied the landlord's claim against the Schmidt estate.[6] On October 2, 1990, the Orphans' Court, sitting *en banc* in a panel of three judges, affirmed the order, without an opinion.

The landlord appealed the order to the Pennsylvania Superior Court, contending that a notice of claim filed pursuant to § 3532(b)(2) failed to commence a cause of action, and that, as a consequence, the Orphans' Court "lacked jurisdiction" to decide the merits of a claim that had never been presented for decision. It also maintained that no claim had been presented at the audit. Furthermore, the landlord argued that even if a claim had been presented, the Orphans' Court abused its discretion in striking the attempt to withdraw it.[7] The Superior Court rejected each of these contentions in an opinion dated August 13, 1991.[8] The Supreme Court of Pennsylvania, after having granted the landlord's petition for discretionary review and hearing oral argument, affirmed the Superior Court's order without an opinion on February 16, 1993. One justice dissented without opinion.

After the Pennsylvania Supreme Court's affirmance, the members of the survivor firm dismissed the declaratory judgment action

---

isdiction thereof, the court may make such provision for the distribution or satisfaction of the claim as shall be equitable.
20 Pa. Cons.Stat. § 3389 (1996).

5. In explanation for its refusal to permit a withdrawal, the court cited, *inter alia*, the potential prejudice to several of Schmidt's partners whose contingent claims for contribution or indemnity against the Estate would be jeopardized by distribution prior to resolution of the landlord's claims against them.

6. The operative portion of the order read: "AND NOW, this 12 day of July, 1990, it is ORDERED, ADJUDGED and DECREED that the Claim of Square 106 associates against the estate of Harold Schmidt, deceased, is denied."

7. The landlord made no arguments on appeal with respect to the merits of the underlying claim, and the Superior Court expressed no opinion as to the correctness of the decision in that regard. Nor did the Superior Court reach the landlord's constitutional arguments, which were found not to have been preserved for appeal.

8. The decision is reported as *In re Estate of Schmidt*, 408 Pa.Super. 353, 596 A.2d 1124 (1991), in a form that, in appellants' words, "differs slightly" from the opinion issued by the court. No suggestion is made that the differences are material to this appeal. Accordingly, we cite to the published opinion in the Atlantic Reporter. The summary affirmance by the Pennsylvania Supreme Court is reported at 533 Pa. 86, 619 A.2d 1058 (1993).

then pending in federal court in Pennsylvania. As a result, in August of 1993 the District of Columbia Superior Court lifted the stay which had been placed upon the landlord's consolidated action. Soon thereafter, the trial court granted summary judgment [9] dismissing the landlord's claims against every defendant on the ground that the rejection of its claim in the probate of the Schmidt estate barred its action against all of the tenants in the District of Columbia under the doctrines of res judicata and collateral estoppel. The trial court determined that the landlord's present claims involved the same cause of action as the Schmidt litigation, and that all of the present defendants were in privity with Schmidt's estate. Alternatively, the trial court determined that the issue whether the lease had been assigned or assumed under the merger agreement had already been conclusively decided against the landlord in the probate proceeding. The landlord took this timely appeal.

We apply the familiar and well-settled standards for appellate review of a grant of summary judgment. *See, e.g., Drejza v. Vaccaro,* 650 A.2d 1308, 1312 (D.C.1994). In order to be entitled to summary judgment, defendants must demonstrate that there was no genuine issue of material fact, and that they were entitled to judgment as a matter of law. Super.Ct.Civ.R. 56(c). The record must be reviewed in the light most favorable to the party opposing the motion, here the landlord. *See Graff v. Malawer,* 592 A.2d 1038, 1040 (D.C.1991).

██ The two concepts of res judicata and collateral estoppel, although related, operate in distinctly different manners. As redefined by Restatement usage, which we have adopted in our caselaw, res judicata operates as "claim preclusion" while collateral estoppel operates as "issue preclusion." [10] We examine in turn each of these rationales relied upon by the trial court as applied to the two major groups of appellees: those who were only members of the consolidated firm and those who were also members of the firm that originally executed the lease document.

## II. The Consolidated Firm

### A.

██ Under the settled doctrine of res judicata, a final judgment on the merits "embodies all of a party's rights arising out of the transaction involved," *Stutsman v. Kaiser Foundation Health Plan of Mid–Atlantic States, Inc.,* 546 A.2d 367, 370 (D.C.1988), and precludes relitigation in a subsequent proceeding of all issues arising out of the same cause of action between the same parties or their privies, whether or not the issues were raised in the first proceeding. *Molovinsky v. Monterey Coop.,* 689 A.2d 531, 533 (D.C.1997) (citations omitted). Such a judgment, we have said, "estops not only as to every ground of recovery or defense actually presented in the action, but also as to every ground which might have been presented." *Id.* Pennsylvania principles of res judicata, which we apply pursuant to 28 U.S.C. § 1738 (1988),[11] do not differ in this respect. *See In re Estate of R.L.L.,* 487 Pa. 223, 409 A.2d 321, 323 n. 7 (1979) ("a party is commonly forbidden to raise issues that could have been litigated but were not, be-

9. The trial court termed its action a dismissal, but since it necessarily considered matters outside the face of the complaint, the effect was a grant of summary judgment. Appellant takes no issue with this point.

10. We do not understand Pennsylvania law with respect to these doctrines to differ from that of the District or the Restatement in any material way relevant to the disposition of this appeal. Likewise, the structure of the Pennsylvania court system seems reasonably clear from the relevant statutes. No party filed any motion for the certification of any questions of law to the Pennsylvania Supreme Court, as permitted under D.C.Code § 11–723(h)(1). We have therefore proceeded to decide the case before us.

11. This statute requires that every court in the United States afford judicial proceedings "the same full faith and credit ... as they have by law or usage in the courts of such State, Territory or Possession from which they are taken." 28 U.S.C. § 1738 (1988). Judgments rendered by a state court must be afforded the same preclusive effect as the courts of the rendering state would afford them. *See Marrese v. American Academy of Orthopaedic Surgeons,* 470 U.S. 373, 384, 105 S.Ct. 1327, 1334, 84 L.Ed.2d 274 (1985); *18 JAMES WM. MOORE ET AL, MOORE'S FEDERAL PRACTICE § 130.02 (3d ed.1997).*

cause of the desirability of settling the entire controversy in a single proceeding") (citations omitted); *Hopewell Estates, Inc. v. Kent,* 435 Pa.Super. 471, 646 A.2d 1192, 1194 (1994) ("[a]ll matters which might have been raised and decided in the former suit, as well as those which were actually raised therein, are res adjudicata in a subsequent proceeding between the same parties and their privies"); *Carroll Tp. Auth. v. Monongahela Mun.,* 145 Pa.Cmwlth. 273, 603 A.2d 243, 249 (1992) ("the scope of merger or bar includes not only matters that actually were litigated but also all matters that could have been litigated but were not") (citing *Duquesne Light Co. v. Pittsburgh Railways Co.,* 413 Pa. 1, 194 A.2d 319, 321 (1963)).¹²

■ The basic purposes of res judicata are "to conserve limited judicial resources, establish certainty and respect for court judgments, and protect the party relying on the judgment from vexatious litigation. In keeping with these purposes, the doctrine must be liberally construed and applied without technical restriction." *McArdle v. Tronetti,* 426 Pa.Super. 607, 627 A.2d 1219, 1222 (1993). Thus, a plaintiff has, as the trite saying goes, only one bite at the apple against a particular defendant for all grievances arising out of a cause of action. If unsuccessful, a second action is precluded. *See* RESTATEMENT (SECOND) OF JUDGMENTS § 19 (1982). We likewise have noted that it is a fundamental purpose of the doctrine "to prevent the relitigation of claims that plaintiffs have already had a full

and fair opportunity to litigate, thereby protecting adversaries from expensive and vexatious multiple lawsuits, conserving judicial resources, and minimizing the likelihood of inconsistent outcomes." *Smith v. Jenkins,* 562 A.2d 610, 615 (D.C.1989) (citing *Montana v. United States,* 440 U.S. 147, 153–54, 99 S.Ct. 970, 973–74, 59 L.Ed.2d 210 (1979)). Such policy considerations may require dismissal of a second action "even though the substantive issues have not been tried, especially if the plaintiff has failed to avail himself of opportunities to pursue his remedies in the first proceeding, or has deliberately flouted orders of the court." RESTATEMENT (SECOND) OF JUDGMENTS § 19 cmt. a.

■ There can be little doubt that the landlord's current claim insofar as it involves the Schmidt estate and those in privity with it constitutes the same cause of action and indeed involves the same issues decided in the prior litigation, namely, contractual liability for having allegedly breached the 1983 agreement. Nonetheless, the landlord maintains that it never commenced a "cause of action" in the prior litigation which would be entitled to res judicata effect because it did not file a formal complaint with the Orphans' Court. More specifically, the landlord contends that the claim it filed pursuant to 20 PA. CONS.STAT. § 3532(b)(2) was insufficient, as a matter of Pennsylvania law, to initiate a "cause of action" capable of resolution on the merits by the Orphans' Court.¹³

12. While it is true that these and other Pennsylvania cases recite a requirement that there be some "identity of issues" or "identity of the thing sued upon or for" between the two actions for res judicata to apply, we think it erroneous to read this as requiring that the issue in the second action actually have been litigated and decided in the first (as opposed to simply requiring that the issue might potentially have been raised in the first). To do so would render meaningless the language quoted above, and leave res judicata no broader than collateral estoppel. In *Safeguard Mutual Ins. Co. v. Williams,* 463 Pa. 567, 345 A.2d 664 (1975), the underlying issue in the initial litigation, brought by the Commonwealth Insurance Department alleging violations of the insurance statute and the resultant administrative burden on the insurance department, was plainly distinct from that involved in the subsequent litigation brought by policyholders asserting a violation of their contractual rights. In any event, as we indicate below, because the issues presented in this action are precisely those already resolved in the prior action, namely contractual liability for the 1983 breach, we would conclude that there exists a sufficient "identity of issues" for the application of res judicata.

13. The landlord's filing, in its entirety, read:

> IN RE: ESTATE OF HAROLD R. SCHMIDT
> CLAIM
> To the Clerk of Orphans' Court Division:
> Index and make proper entry in your official records of the claim of The Square 106 Associates in the amount of $2,036,398.00 against the estate of the above named decedent. This claim is filed under Section 732(b)(2) of the Fiduciaries Act of 1949 as amended.
> The said decedent, who resided at 154 North Bellfield Apt. 20, Pittsburgh, PA 15213, died on June 10, 1989.
> Written notice of this claim was given to J. Mark Munson or Rose, Schmidt, Hasley & DiSalle, counsel, August 3, 1989.
> THE SQUARE 106 ASSOCIATES.

It is plain, however, that the Orphans' Court judge rejected this argument, treated the filing and subsequent actions as a claim, and denied the claim. On appeal from that ruling, the Pennsylvania Superior Court squarely held that the landlord did not "merely file a request that the orphans' court division postpone distribution pending resolution of the District of Columbia action. Rather, appellant *filed a claim against the Estate.*" *In re Estate of Schmidt, supra,* 596 A.2d at 1129 (emphasis added). Accordingly, "the orphans' court division did not abuse its discretion in concluding that appellant had presented a claim over which [it] had jurisdiction." *Id.*[14] The Pennsylvania Superior Court and, in turn, the Pennsylvania Supreme Court, affirmed the order of the Orphans' Court that "the Claim is denied." We think that under Pennsylvania law, therefore, the decision was a valid, final judgment on the merits of the claim. Appellant, while failing to follow up on its asserted claim, certainly had a "full and fair opportunity" to do so.[15]

■ The landlord also contends that decisions of Pennsylvania's Orphans' Courts are not entitled to res judicata effect except with respect to estate assets subject to distribution, since those courts have only limited *in rem* jurisdiction. See RESTATEMENT (SECOND) OF JUDGMENTS § 30(2). To the contrary, however, the Orphans' Court is a court of general jurisdiction. The particular court in which the probate proceeding occurred was a division of the Court of Common Pleas of Allegheny County. 42 PA. CONS.STAT. § 951(b) (1996). The Courts of Common Pleas have unlimited original jurisdiction of all actions and proceedings. 42 PA. CONS. STAT. § 931(a) (1996). The divisions of the common pleas courts were established essentially for purposes of administrative convenience, and each division is vested with the full jurisdiction of the whole court. *In re Estate of Hall,* 517 Pa. 115, 535 A.2d 47, 59 (1987); *In re Estate of Cantor,* 424 Pa.Super. 24, 621 A.2d 1021 (1993). 20 PA. CONS.STAT. § 952 (1996) provides that "[i]n a court of common pleas having two or more divisions each division of the court is vested with the full jurisdiction of the whole court, but the business of the court may be allocated among the divisions of the court by or pursuant to general rules." Moreover, 20 PA. CONS.STAT. § 712 (1996) confers upon the Orphans' Court division broad residual and discretionary jurisdiction over all matters that are

**14.** We simply cannot agree with the appellants' characterization of the issues actually before the Orphans' Court. It is the Pennsylvania courts, not appellants or this court, that have the final say on what was involved in the proceedings before them. Appellants make much of the Pennsylvania Superior Court's comment that the issue before it was not whether the form filed by appellant "commenced a cause of action" but rather whether the Orphans' Court had jurisdiction to determine the merits of appellant's claim. *In re Estate of Schmidt, supra,* 596 A.2d at 1128. It is plain that the Superior Court treated the determination before it as one made on the merits. There is no shred of any suggestion that the only issue was whether it was proper for the Orphans' Court to distribute the assets. The order that was challenged on appeal and affirmed was, by its express terms, one denying the claim, not one distributing the assets. However the filing of a probate claim may be characterized, for purposes of res judicata and considering the policies underlying the doctrine, we are unable to discern any basis for not treating the Orphans' Court judgment, explicitly affirmed on three appeals, as final and binding with respect to the landlord's claim.

We do not think that this conclusion is undermined, as appellants suggest, by an earlier federal district court determination by Judge Alan Bloch that the § 3532 notice of claim did not formally constitute a complaint pursuant to Pa. R. Civ. P. 1019. The district court had rejected the Estate's argument in opposition to the landlord's removal of its declaratory judgment action filed August 11, 1989, that the action constituted a counterclaim and was therefore nonremovable. However, that decision did not rule out the possibility that the landlord's § 3532 filing was sufficient to confer jurisdiction upon the Orphans' Court to reach the merits of the claim. Indeed, the subsequent Pennsylvania state court decisions in this case have so held.

**15.** We find no merit in the landlord's contention that precluding it from litigating its current claims would deny it due process of law. The landlord argues that it had no notice that filing a claim pursuant to 20 PA. CONS.STAT. §§ 3532 or 3389 initiated, under Pennsylvania law, a cause of action which could result in a final and binding judgment. However, despite the refusal to permit a voluntary dismissal, the Pennsylvania courts gave the landlord a "full and fair opportunity" to present this argument and to litigate its claim. We think due process requires no more.

subject to resolution by courts of common pleas generally. *In re Estate of Hall, supra,* 535 A.2d at 59.

■ Consequently, the Schmidt estate and all those in privity with it are entitled to the protection of the res judicata effect of the prior denial of the landlord's claim. The landlord does not contend that the trial court erred in its determination that all the defendants who, like Schmidt, were only members of the consolidated or successor firm, were in privity with Schmidt's estate, or that the claims against them involve the same cause of action as that in the prior suit.[16] Accordingly, we do not further address the trial court's dismissal of claims against those defendants on the ground of res judicata. Furthermore, because we hold that the doctrine of claim preclusion bars the current action against these defendants, we need not decide whether they may also assert issue preclusion with respect to specific factual or legal determinations by the Orphans' Court.

### B.

■ The dissent, focussing upon the Pennsylvania Supreme Court's affirmance without opinion, suggests that this action strips the proceeding of any res judicata effect. It asserts that Pennsylvania law requires this result since, theoretically, the Pennsylvania Supreme Court could have affirmed on the alternative ground that it was not an abuse of discretion for the Orphans' Court to delay distribution further notwithstanding that the claim was pending in another forum.[17] We cannot agree.

■ The case of *Speyer, Inc. v. Goodyear Tire and Rubber Co.,* 222 Pa.Super. 261, 295 A.2d 143 (1972), relied upon by the dis-

sent for its conclusion, simply illustrates a corollary to the rule of collateral estoppel: "if a judgment of a court of first instance is based on determinations of two issues, either of which standing independently would be sufficient to support the result, the judgment is not conclusive with respect to either issue standing alone." RESTATEMENT (SECOND) OF JUDGMENTS § 27, cmt. i. The determinations, not being "essential to the judgment," have no issue preclusive effect in subsequent proceedings.[18] However, if on appeal the "appellate court upholds one of these determinations as sufficient and refuses to consider whether or not the other is sufficient and accordingly affirms the judgment, [then] the judgment is conclusive as to the first determination" but not the second. RESTATEMENT (SECOND) OF JUDGMENTS § 27, cmt. o.

In *Speyer,* plaintiff had initially sued the manufacturer of a fuel pump which had caused an explosion. The trial court entered judgment for the defendant on the alternate grounds that the manufacturer had not been negligent and that plaintiff had been contributorily negligent, either of which would have independently supported the result. The appellate court affirmed without considering the issue of contributory negligence. As a consequence, when plaintiff subsequently sued Goodyear as the manufacturer of the fuel hose, it was ruled that the earlier trial court finding of contributory negligence was not entitled to issue preclusive effect. *Id.* 295 A.2d at 147. *Speyer* squarely held that "a trial court's finding of fact which is not relied upon by an appellate court in affirming a judgment is not conclusive against one of the parties who brings a subsequent suit against a non-party, in which the fact is in issue." *Id.*

---

16. *See* RESTATEMENT (SECOND) OF JUDGMENTS § 60(1): "A judgment in an action by an injured person against a partner upon an obligation or liability incurred in the course of partnership business ... if against the injured person, terminates his claim against another partner based upon that obligation."

17. Although a third alternative is suggested based on the Superior Court's opinion, we are unable to discern why that third alternative would differ from an affirmance on the merits in the circumstances here. We think the dissent

too readily asserts that for privity purposes, collateral estoppel and res judicata are effectively indistinguishable.

18. While collateral estoppel applies only to those findings on issues which were "essential to the judgment," *see* RESTATEMENT (SECOND) OF JUDGMENTS § 27, res judicata precludes the relitigation between the same parties of all issues arising out of the same cause of action, even if they were not raised in the first proceeding. *See Hopewell Estates, supra,* 646 A.2d at 1194.

Neither the Restatement nor *Speyer* stands for the proposition that an appellate court's failure to reach a particular issue (or even to specify at all the basis for affirmance) robs the judgment of *claim preclusive* effect.[19] In *Speyer* the plaintiff was still precluded by res judicata from relitigating its claim against the initial defendant despite the fact that it was permitted to relitigate in a subsequent suit against a second defendant an *issue* previously resolved against it by the trial court (but not relied upon by the appellate court in the affirmance).[20]

The case before us is entirely different from *Speyer,* in that we are dealing here with claim rather than issue preclusion and appellate silence as to the grounds for affirmance. It is one thing to deprive a trial court finding of collateral estoppel effect where it can be seen that the appellate court did not rely upon that finding in its affirmance. It seems to us quite another to suggest that a trial court judgment on the merits, sustained by three appellate courts against a jurisdictional attack, loses its claim preclusive effect where there exists the theoretical possibility that an affirmance without opinion might have been based upon some ground completely different from that of the lower courts. By that reasoning, if the trial court in *Speyer* had decided in the defendant's favor on the sole ground that the defendant was not negligent and the appellate court summarily affirmed, the decision would nonetheless have no preclusive effect if the appellate court *could* have held that the plaintiff was contributorily negligent as a matter of law. This is the sort of "pure speculation" that we are admonished to avoid. Surely in the normal course of events, a clear trial court judgment which is

affirmed without opinion would be viewed as an affirmance of the trial court's decision and its essential bases.[21]

The only Pennsylvania state case we have found involving this type of situation squarely supports such an approach in the res judicata context. In *Commonwealth Pennsylvania Game Com. v. Hilliard,* 3 Pa. Cmwlth. 560, 284 A.2d 326 (1971), entailing the condemnation of farmland, the trial court at the pleading stage had refused to permit a challenge to an amended complaint that was the same as one that was or could have been made to the original complaint. This ruling was affirmed by the Pennsylvania Supreme Court without opinion. At a subsequent proceeding, the landowners again attempted unsuccessfully to raise the same challenge. On appeal, the Commonwealth Court ruled that res judicata had been correctly applied. "[W]hile neither appellants nor this Court can know the reasoning on which the Supreme Court sustained the lower court's ruling that it was too late [in responding to the amended complaint] to raise the issue of the propriety of the taking, at least it is quite clear that that was its decision and, therefore, it is res adjudicata between the parties in this case." *Id.* 284 A.2d at 327.[22] *See also Joseph L. v. Office of Judicial Support,* 516 F.Supp. 1345, 1348 (E.D.Pa.1981) ("merely because the trial court's judgment is affirmed without opinion is of 'no consequence' in determining whether the doctrine of res judicata has application in a subsequent proceeding").

The dissent takes the position that treating an appellate court's summary affirmance

**19.** Indeed, § 27 of the Second Restatement is entitled "Issue Preclusion—General Rule," and is unhelpful in determining the applicability or scope of the altogether separate doctrine of claim preclusion.

**20.** A potential source of confusion flows from dicta in *Speyer,* stating that "findings of a trial court which are not relied upon on appeal should not remain *res judicata.*" *Id.* 295 A.2d at 146 (emphasis added). It is evident in context that the court used the term "res judicata" in its broadest sense, which can refer, *inter alia,* to issue preclusion. *See* 18 Moore, *supra* note 11, § 131.10 1[a] (3d ed.1997) (res judicata in its broadest sense includes "claim preclusion (or

true res judicata) and issue preclusion (or collateral estoppel).''). For purposes of clarity, we use the term "res judicata" in its narrow sense as referring only to claim preclusion.

**21.** Of course, with respect to claim preclusion as opposed to issue preclusion, the critical element is the nature of the judgment that was affirmed, not necessarily the issues actually litigated.

**22.** In the interim between these two rulings, the landowners had sought relief in the federal court, which gave similar effect to the Pennsylvania Supreme Court's affirmance. *Hilliard v. Pennsylvania,* 308 F.Supp. 756 (W.D.Pa.1970).

as generally resting on the basis relied upon below requires impermissible speculation.[23] However, *Safeguard Mutual Ins. Co. v. Williams, supra* note [12], upon which it relies, involved quite the opposite order of events. There, the *trial court* in the first proceeding had issued its ruling without explanation, leaving unclear whether the decision had been based on the merits or otherwise. When defendant in a subsequent proceeding asserted collateral estoppel on the merits issue, it was held that the doctrine did not apply because it was uncertain whether that issue had previously been resolved. In contrast, there is no ambiguity here with respect to what issues have been determined by the Orphans' Court and the Superior Court. Nor do we think the summary affirmance creates any ambiguity as to the action affirmed.[24]

Most importantly, the dissent's argument essentially disregards the essence of the trial court order. The operative portion was that the claim was denied. *See* note [6] *supra.* It was that action, not a refusal to further delay distribution, that was thrice affirmed against the only challenges appellants raised. We see no basis to disregard this reality. In sum, we are confident that if the instant litigation were brought in Pennsylvania, the Pennsylvania courts would conclude that the claim is barred by res judicata.

We now turn to the issue whether the defendants who were members of the original tenant firm fell within the application of the doctrines of res judicata and, alternatively, collateral estoppel.

### III. The Original Tenant Firm

#### A.

▇▇▇ The landlord argues that the trial court erred in its determination that the members of the original tenant firm, Chap-

man, Duff & Paul, although not actual parties to the Pennsylvania proceeding, were "fully represented" at that proceeding, and therefore in privity with the Schmidt estate. "The doctrine of res judicata applies to and is binding, not only on actual parties to the litigation, but also to those in privity with them." *Stevenson v. Silverman,* 417 Pa. 187, 208 A.2d, 786, 788 (1965). Privity has been described as "mutual or successive relationships to the same right of property, or such an identification of interest of one person with another as to represent the same legal right." *Montella v. Berkheimer Associates,* 690 A.2d 802, 804 (Pa.Commw.Ct.1997). Traditional categories of privies include "those who control an action although not parties to it; those whose interests are represented by a party to an action; and successors in interest." *Smith v. Jenkins, supra,* 562 A.2d at 615 (quoting *Lawlor v. National Screen Service,* 349 U.S. 322, 329 n. 19, 75 S.Ct. 865, 869 n. 19, 99 L.Ed. 1122 (1955)). Whether preclusion is justified depends upon the situation involved, and "the issue must be determined in light of the circumstances in each case." *District of Columbia Redevelopment Land Agency v. Dowdey,* 618 A.2d 153, 164 (D.C. 1992).

▇▇▇ It is the landlord's contention that the CDP defendants, as members of the original tenant, have not demonstrated that they shared a sufficient "mutuality of interest" with the Schmidt estate in the former litigation to establish privity. It is argued that those defendants, whose liability is premised upon their being party to the original lease agreement, shared no interest with those members who, like Schmidt, joined through consolidation, and whose liability depended upon a finding that the consolidated firm had

---

**23.** More precisely, the dissent applies this principle only where a question of privity arises. Although it may be necessary in such a situation to determine whether the same cause of action is involved and whether it was decided on the merits, we cannot perceive why the effect of a summary affirmance should differ depending upon whether an original party or a privy thereof is involved. Unlike the dissent, we see no ambiguity in that action here.

**24.** The comment in *Speyer* that an appeal creates a "clean slate," 295 A.2d at 146, must be read in context: "The view that an appeal creates a clean state, so to speak, *upon which the appellate court's grounds of decision are inscribed,* has been said to be supported by the great weight of judicial and scholarly opinion." (Emphasis added). This is quite so when the appellate court inscribes its grounds of decision, but says nothing about affirmances without opinion.

assumed liability under the lease.[25] Indeed, the landlord suggests that the interests of the CDP partners potentially were adverse to those of Schmidt and the other RSDH partners in the prior litigation in that a determination that the consolidated firm had not assumed liability under the lease might have tended to increase the proportional burden of the liability bore by members of the original tenant.

Appellees respond by noting that the June 1990 complaint demanded judgment against members of the original tenant firm only "to the extent of their respective interests in the partnership assets or property of [the consolidated firm] as of June 30, 1987."[26] They maintain that, as à consequence, the landlord may only establish their liability on the theory that they were members of the consolidated firm which had assumed the lease. Even if we were to adopt such a crabbed reading of the current complaint,[27] we fail to see how this affects the relationship of the CDP partners to the Pennsylvania litigation. There is simply no evidence in the record that these defendants, in their capacity as members of the original tenant firm, had a mutuality of interest with the Schmidt estate in the Pennsylvania court's resolution of the liability of members only of the consolidated firm, let alone that their interests were "fully represented." Under the circumstances of this case, we agree with the landlord that the CDP defendants may not be considered to have been in privity with the prior proceeding, and that they may not assert res judicata as a defense in this action.

**B.**

 We turn next to the question whether the CDP defendants may properly rely upon the collateral estoppel effect of the Pennsylvania judgment to preclude a finding of their liability under the lease agreement. Whereas claim preclusion applies to entire claims, issue preclusion precludes the relit-

igation of issues actually litigated and necessary to the outcome of a prior case involving the party against whom estoppel is asserted, even if such issues are subsequently presented as part of a different cause of action. Moreover, while claim preclusion operates only between the parties to the prior litigation and those in privity with them, a stranger to the first action may invoke issue preclusion against a party to that action. 18 MOORE, *supra* note [11], § 131.13[1] (3d ed.1997). Hence the CDP defendants, while not privy to the prior dispute, are not thereby necessarily prevented from asserting defensive "non-mutual" collateral estoppel. *See, e.g., Jackson v. District of Columbia,* 412 A.2d 948, 952 (D.C.1980); *Thompson v. Karastan Rug Mills,* 228 Pa.Super. 260, 323 A.2d 341, 344 (1974).

The landlord contends that the Orphans' Court's resolution of the Schmidt estate's liability under the lease should not be given issue preclusive effect because the remaining issue involved in the current dispute, whether the CDP tenants remain liable on the original lease agreement, is entirely different from the one involved in the Schmidt litigation. There, the Orphans' Court did not reach the issue of the original tenant's liability; it simply determined that the consolidated firm had not assumed liability under the lease.

 In describing the rule of collateral estoppel we have said that "when an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." *Pipher v. Odell,* 672 A.2d 1092, 1095 (D.C.1996) (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 27). An issue is "actually litigated" when it is (1) "properly raised, by pleadings or otherwise," (2) "submitted for determina-

---

**25.** The Orphans' Court properly did not decide the issue of the original tenants' liability. That issue had not been presented to it, since Schmidt had come in through the consolidation.

**26.** Under the terms of the lease, those tenants cannot be held personally liable beyond their

interest in the lessee firm's assets at the time of breach.

**27.** Such a reading, for example, would not necessarily preclude liability based on a tracing theory.

tion," and (3) "determined." *Id.* (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 27 cmt. d). Pennsylvania law is in accord. *See Lebeau v. Lebeau*, 258 Pa.Super. 519, 393 A.2d 480, 483–84 (1978) ("[P]reclusion applies only to issues actually litigated and determined, and not to matters which might have been raised in the first proceeding, but were not.").[28]

▇ We agree with the landlord that even had it actually litigated its claim against the Schmidt estate, the scope of issue preclusion would be limited only to those issues which were resolved by the Orphans' Court. The Orphans' Court held only that the consolidated firm, of which Schmidt was a member, was not liable on the lease. It did not, however, resolve the liability under the lease of the original tenants. Its finding that the RSDH partners did not assume liability under the lease would not preclude a subsequent judicial determination that the original tenants remained liable. Therefore, those defendants who were members of Chapman, Duff & Paul are not protected by the doctrine of collateral estoppel.[29]

Because we conclude that this breach of contract action is not barred by the doctrines of claim preclusion or issue preclusion with respect to the former CDP partners, we reverse the summary judgment in their favor and remand for further proceedings. In all other respects, the decision below is affirmed.

*So ordered.*

RUIZ, Associate Judge, concurring in part and dissenting in part:

This appeal arises from actions for breach of a lease filed by the landlord against over sixty individuals who were members of three different tenant law firms which occupied the leased premises in the District of Columbia. The principal question presented on appeal is whether the trial court properly dismissed the landlord's actions on the ground that they are barred under principles of *res judicata* and collateral estoppel by the final order of the Pennsylvania Supreme Court in a probate proceeding distributing the estate of Harold R. Schmidt, one member of the law firm tenants that succeeded the original tenant. The order in that Pennsylvania probate case, adjudicated in the context of a single defendant's estate, is erected by the majority as a bar to the landlord's claims against approximately fifty of the named defendants who, like Schmidt, also were members of law firm tenants that succeeded the original tenant. The majority reasons that the landlord's claim against Schmidt's partners is precluded because it is the same claim that was rejected in the Schmidt estate proceeding and the landlord had a "full and fair" opportunity in that proceeding to litigate the merits of its claim. I submit this conclusion is incorrect. Proper application of claim preclusion principles requires that we first ascertain whether the basis for the final order in Pennsylvania is one applicable to Schmidt's partners. In other words, there is no *res judicata* bar unless Schmidt's partners are in privity with Schmidt with respect to the matter previously decided. Here, we

---

**28.** The trial court determined that collateral estoppel applied because the landlord had had a "full and fair opportunity to litigate" the issue in the Orphans' Court. This standard, while of use in determining the scope of claim preclusion, is not determinative in the context of issue preclusion. The tenants, although conceding that the trial court employed an erroneous standard, nonetheless contend that the decision should be affirmed under the proper standard.

**29.** Writing in separate briefs, members of the original tenant partnership argue for affirmance on alternative grounds not addressed by the trial court. Certain members contend, *inter alia*, that because they each withdrew from the consolidated firm prior to its dissolution and the breach of the lease in 1987, they had no interest in the

consolidated firm's partnership assets. Members of the original tenant also contend that the landlord impliedly accepted the surrender of the premises by the original tenant by accepting rent payments from the consolidated firm.

From the record on appeal, we would have difficulty in concluding that there is no genuine issue of material fact with respect to these issues. At least in part, it is claimed that discovery is incomplete. In any event, since we are remanding the case to the trial court as to the CDP tenants, we think it appropriate in the circumstances of this case that the trial court decide in the first instance the validity of the other alternative grounds for affirmance urged by those appellees.

have no assurance that that is the case because the Pennsylvania Supreme Court did not express any opinion at all. Thus, we do not know whether its judgment in favor of the Schmidt estate was on a basis shared by Schmidt's partners or, rather, for reasons specific to Pennsylvania probate law which are inapplicable in the present action to Schmidt's partners.

The majority's sweeping application of *res judicata* in this case has consequences out of proportion to the limited action taken by the landlord in the Pennsylvania estate proceeding, and enforces what is essentially a default judgment entered in a probate proceeding for the purpose of adjudicating claims against only the Schmidt estate, one of the more than sixty defendants in the present litigation. Precluding the present litigation in this context does not serve the purposes of *res judicata*, to avoid multiplicitous and vexatious litigation and conserve judicial resources, for here the landlord had proceeded in a straightforward and efficient manner, by filing actions involving all relevant parties in Superior Court, which has authority to adjudicate the landlord's claims against all the defendants.

The substantive issue in the present case is whether the individual tenants are liable to the landlord under the lease. Resolution of that issue may have been, but need not have been, the basis for the Pennsylvania Supreme Court's final order in the probate proceeding. I conclude that because "the thing decided" in the Pennsylvania proceeding may well have been different from the issue presented for adjudication in the landlord's present action in the District of Columbia against Schmidt's partners, we are consequently unable to determine whether they are Schmidt's privies. Given this uncertainty, Pennsylvania law prohibits application of either *res judicata* or collateral estoppel. As to all the defendants but Schmidt, therefore, I would reverse and remand for consideration of the landlord's claims on the merits.[1]

By statute, all courts in the United States must give the judicial proceedings of any state "the same full faith and credit ... they have by law or usage in the courts of such State." 28 U.S.C. § 1738 para. 3 (1994).[2] Therefore, we look to the law of Pennsylvania to determine the effect of the Pennsylvania courts' orders on the actions filed in the District of Columbia.[3]

The Pennsylvania Supreme Court has explained the policy and purpose underlying *res judicata*:

> The doctrine of res judicata is based on public policy and seeks to prevent an individual from being vexed twice for the same cause ... As pertinently stated in *Hochman v. Mortgage Fin. Corp.*, 289 Pa. 260, 263, 137 A. 252, 253 (1927): 'The rule should not be defeated by minor differences of form, parties or allegations, when these are contrived only to obscure the real purpose, a second trial on the same cause between the same parties. The thing which the court will consider is whether the ultimate and controlling issues have been decided in a prior proceeding in which *the present parties actually had an opportunity to appear and assert their rights*. If this be the fact, then the matter ought not to be litigated again, nor should the parties, by a shuffling of plaintiffs on the record, or by change in the character of the relief sought, be permitted to nullify the rule.'

---

1. I agree with the majority's reasoning that collateral estoppel does not bar the landlord's action against members of the original tenant law firm.

2. The tenants and the trial court rely upon the Full Faith and Credit Section of the Constitution. U.S. CONST. art. IV, § 1. That section, however, applies by its terms only to states and not to the United States or to the District of Columbia. *See Mills v. Duryee*, 11 U.S. (7 Cranch) 481, 485, 3 L.Ed. 411 (1813) ("The [appellant] object[s] that the act [implementing the Full Faith and Credit Section] does not apply to Courts of th[e] district

[of Columbia]. The words of the act afford a decisive answer, for they extend to 'every Court within the United States.' ").

3. The issues presented by this case are quite baffling and arise in a complex factual and procedural context. Our duty to apply Pennsylvania law cautions us to decide an issue only if there is "controlling precedent" on the relevant question of law. In these circumstances, even though no party requested it, the more prudent course would have been to certify the unanswered legal questions to the Pennsylvania Supreme Court. D.C.Code § 11–723(h)(1) (1995).

*Stevenson v. Silverman,* 417 Pa. 187, 208 A.2d 786, 788 (1965).

Under Pennsylvania law *res judicata* and collateral estoppel apply only if certain conditions are met:

It is well settled that for the doctrine of res judicata to prevail there must be a concurrence of four conditions: 1) identity of issues, 2) identity of causes of action, 3) identity of persons and parties to the action, and 4) identity of the quality or capacity of the parties suing or being sued. With respect to collateral estoppel we have recently stated that a plea of collateral estoppel is valid if, 1) the issue decided in the prior adjudication was identical with the one presented in the later action, 2) there was a final judgment on the merits, 3) the party against whom the plea is asserted was a party or in privity with a party to the prior adjudication, and 4) the party against whom it is asserted has had a full and fair opportunity to litigate the issue in question in a prior action. Thus, for [a party] to invoke either res judicata or collateral estoppel the issues presented before [the first court] must be the same as those raised in the instant action.

*Safeguard Mut. Ins. Co. v. Williams,* 463 Pa. 567, 345 A.2d 664, 668 (1975) (citations omitted); *accord, e.g., Mintz v. Carlton House Partners, Ltd.,* 407 Pa.Super. 464, 595 A.2d 1240, 1246 (1991). Pennsylvania law also provides that, in considering whether a prior adjudication is *res judicata,* a court must look to the judgment of the highest court deciding the issue. *See Speyer, Inc. v. Good-year Tire and Rubber Co.,* 222 Pa.Super. 261, 295 A.2d 143, 146 (1972). In this case, that is the Pennsylvania Supreme Court.

Applying the above principles to the landlord's claim against the Schmidt estate, *res judicata* applies to bar the claim filed in Superior Court if it was or could have been brought against the estate in the probate proceeding. *See Stevenson, supra,* 208 A.2d at 788; RESTATEMENT (SECOND) OF JUDGMENTS § 19 cmt. a. Thus, claim preclusion bars the landlord's present claim against the Schmidt estate. Claim preclusion does not directly apply to bar the landlord's claims against Schmidt's partners, however, because those claims not only were not brought against Schmidt's partners, but they could not have been brought against the partners in the context of a probate proceeding to distribute the Schmidt estate. The majority reasons that the landlord's claims against Schmidt's partners are barred under principles of claim preclusion, not collateral estoppel, because the partners are in privity with Schmidt—in essence arguing that they are the "same party" for claim preclusion purposes. Before that indirect application of claim preclusion can be accomplished, however, it must first be determined whether the "issue decided" in the Pennsylvania adjudication is one as to which Schmidt's partners in the instant litigation can claim to be in privity with the Schmidt estate.[4] With respect to application of *res judicata* to bar the landlord's claims against Schmidt's partners, therefore, our primary question is whether the issue decided by the Pennsylvania Supreme Court in the probate action concern-

---

4. The issue here is not, as the majority posits, whether Schmidt and the other defendants are privies because they are partners. See *ante* at 1073. That is not in contention. The issue is whether the Pennsylvania Supreme Court decided on a basis that relates to their status as partners. See RESTATEMENT (SECOND) OF JUDGMENTS, § 60(1)(a):

(1) *A judgment* in an action by an injured person against a partner *upon an obligation or liability incurred in the course of partnership business:*
(a) If against the injured person, *terminates his claim* against another partner *based upon that obligation;*
(Emphasis added). Comment d to §´60 elaborates that the reason for the bar against partners is that "[t]he partners stand in relation of per-

sons vicariously responsible for each other's conduct and the principle stated in § 51 applies." Section 51(1)(b) provides that
*If two persons* have a relationship such that one of them is *vicariously responsible* for the conduct of the other, and an action is brought by the injured person against one of them,
. . .
(1) *A judgment against the injured person* that bars him from reasserting his claim against the defendant *in the first action extinguishes any claim* he has *against the other person responsible* for the conduct *unless:*
. . .
(b) The *judgment in the first action was based on a defense that was personal to the defendant in the first action.*
(Emphasis added).

ing the Schmidt estate was the same or different from the issue presented to the Superior Court of the District of Columbia with respect to Schmidt's partners. Therefore, in this context, the difference between claim preclusion and collateral estoppel is a distinction without much practical difference.

The cause of action filed in the District of Columbia was for breach of a lease contract. The issues to be resolved in that case are whether some or all of the partners of the various firms and their successors that occupied the landlord's premises after the original tenant are liable under the landlord's lease with the original tenant and, if so, in what amount. The action filed by the landlord in Pennsylvania that is claimed to bar the present suit was to protect the landlord's lease claim against the Schmidt estate, in the context of a probate proceeding. Specifically, triggered by Schmidt's death and the start of probate proceedings in Pennsylvania, one week before filing the present action in Superior Court the landlord filed a notice of its claim against real property of the estate within the statutorily prescribed period.[5] The landlord then sought to defer distribution of the Schmidt estate's assets until after the lease claim against Schmidt and the other defendants was resolved in one of two actions that already had been filed for that purpose and which involved all the relevant parties: either in the present action filed in the District of Columbia by the landlord or in the declaratory judgment action filed by the survivor firm in Pennsylvania state court in

Pittsburgh, later removed to the federal district court. The Pennsylvania courts rejected the landlord's request to defer distribution of the estate.[6] Before we can compare the issues in the present case with those decided in the Pennsylvania litigation to determine whether they are the same, it is necessary first to describe the law regarding distribution of the assets of an estate in Pennsylvania.

In Pennsylvania, an estate may be distributed in two ways: An "at-risk" distribution without an accounting and audit and a distribution after an accounting and audit. *See* 20 PA. CONS.STAT. ANN. §§ 3532, 3533 (1975). After an at-risk distribution has been made, a claimant loses his claim unless he files a timely written notice of claim. *Id.* § 3532(a). Once distribution is made in conformity with a final decree following an accounting and audit, the personal representative has no liability for claims against the estate. *Id.* §§ 3386, 3533.[7]

If those were the only rules, then it would appear that the only way that a claimant could recover on a claim if an executor has filed an accounting, as was the case here, is to object and present the claim for adjudication prior to final audit. *See id.* § 3386 (providing that any claim not admitted by the personal representative or presented by the claimant at an audit cannot be satisfied out of the distributed assets). However, where the claim already has been submitted to another court, as also was the case here, Pennsylvania law permits the probate court, in its

---

5. The form filed by the landlord in Pennsylvania states on its face that it "is filed under Section 732(b)(2) of the Fiduciaries Act of 1949 as amended." That section is codified as 20 PA. CONS.STAT. ANN. § 3532(b)(2). The particular subsection cited in the notice provides that no claim may be made against real property conveyed by the personal representative "unless [the] claimant, within one year after the decedent's death, files a written *notice* of his claim with the clerk." 20 PA. CONS.STAT. ANN. § 3532(b)(2) (emphasis added). It appears that the Schmidt estate did not even have real property. Thus, the notice form most likely was simply filed by diligent counsel to protect its client's potential interest in the assets of an estate within a statutory time limit.

6. As discussed in detail in the majority opinion and *infra*, the Pennsylvania Orphan's Court, over the landlord's objection, did not limit itself

to the requested relief to defer distribution of estate assets, but expressly addressed the merits of the landlord's claim against the Schmidt estate and denied the claim. There were three subsequent levels of review, a three-judge panel of the Orphan's Court, the Superior Court (the intermediate appellate court) and the Pennsylvania Supreme Court. Although all three courts affirmed, only the Superior Court issued an opinion, which dealt solely with the Orphan's Court authority to adjudicate the claim. In *none* of those subsequent rulings were the merits of the landlord's claim addressed.

7. For this reason the landlord's claim against Schmidt's estate is barred not only by *res judicata*, but also by operation of Pennsylvania probate law once distribution of the estate was made in conformity with a final decree.

discretion, to delay all or part of a distribution pending the result in the other litigation:

> When any claim not proved in the orphans' court division is being litigated in any other division or court, State or Federal, having jurisdiction thereof, the court *may* make such provision for the distribution or satisfaction of the claim as shall be equitable.

*Id.* § 3389 (emphasis added).

In *In re Estate of Mellon,* the Pennsylvania Supreme Court listed some of the factors the probate court should consider in deciding whether to delay distribution pending the outcome of litigation in another court:

> (1) the nature of the claim being asserted before the other tribunal, (2) the hardship, if any, which deferred distribution of principal or income would impose on the estate or the individual or charitable beneficiaries, and (3) the adverse effect of refusing any withholding and thereby precluding satisfaction from estate assets of a possibly meritorious claim being adjudicated in another court.

455 Pa. 294, 314 A.2d 500, 503 (1974).

The court also noted that the commissioner's comment to section 3389 states that the section

> "gives the orphans' court the opportunity in its discretion to postpone final distribution where advisable *or to make final distribution where the claim, in justice to other interested persons, should be presented in the orphans' court.* The court, in addition to using its discretion as to whether any fund will be withheld, will exercise a[sic] discretion as to the amount to be withheld."

*Id.* (emphasis added).

Turning to the case at hand, the landlord, in its presentations to the probate court, clearly requested only that final distribution be stayed pending conclusion of the litigation in either the survivor firm's declaratory judgment action in Pennsylvania or in its own action which had previously been filed in the District of Columbia. In the landlord's "Statement of Objections to Account," filed January 5, 1990, it noted the pendency of its action in the District of Columbia and re-

quested that the at-risk distributions already made "be returned to the estate . . . pending resolution of the claim . . . against the estate." The statement did not attempt to state in any way the merits of the landlord's claim under the lease.

The landlord's second filing, on January 12, 1990, in response to the executrix' accounting was even clearer. It was captioned "Petition for Continuance of Audit and Distribution of Estate Pending Resolution of Litigation Against Estate." The landlord repeated its previous request for relief, attaching a copy of its District of Columbia complaint to the petition. Again, the landlord did not address or even mention the merits of its action in the body of its petition. Furthermore, the petition expressly cited section 3389 of the Pennsylvania Code, mentioned the pendency of both the District of Columbia action and the survivor firm's declaratory judgment action then pending in federal court in Pittsburgh, and concluded:

> *Whether the District of Columbia action or the Pittsburgh action* will go forward to judgment has not yet been decided; but, in whichever court the action ultimately is concluded, *the issue of . . . liability of decedent . . . will be decided.*

(Emphasis added).

Even though the landlord may not have intended to seek and, indeed, actively resisted, any adjudication in the probate court of its lease claim against the Schmidt estate, it is quite clear that the probate court did consider the landlord's claim against the Schmidt estate on the merits, and denied the claim. After a hearing which the landlord did not attend consistent with its position that it had not filed a claim, the Pennsylvania probate judge concluded that the landlord had filed a claim, denied the landlord's request to withdraw the claim, and after an *ex parte* hearing on the merits, applied District of Columbia law to deny the lease claim based on "evidence presented by the Estate, combined with the lack of any evidence whatsoever in support of [landlord's] position." In essence, the probate judge entered a default judgment. The probate court, sitting en banc, affirmed the probate judge's order without an opinion.

The intermediate appellate court in Pennsylvania, the Superior Court, rejected the contention that "appellant merely file[d] a request that the orphans' court division postpone distribution pending the resolution of the District of Columbia action." It also concluded that the probate court did not abuse its discretion by refusing the landlord's request to withdraw its claim and that it had jurisdiction to decide the claim. The merits of the claim were not presented to the Superior Court, and it therefore did not rule on the probate court's denial of the lease claim.

In determining whether the landlord's present action against Schmidt's partners is barred by the probate proceedings in Pennsylvania, we look to the "ultimate judgment" which, in this case, was rendered by the Pennsylvania Supreme Court. *See Speyer, supra,* 295 A.2d at 146. The Pennsylvania Supreme Court affirmed the Superior Court's judgment without its own opinion and without adopting any of the opinions below. One justice dissented, also without opinion. Again, we look to Pennsylvania law

to interpret the Pennsylvania Supreme Court's ruling in the Schmidt case for purposes of determining its preclusive effect on the present action. Pennsylvania law provides that "the findings of a trial court which are not relied upon on appeal should not remain res judicata." *Id.* In a case involving a subsequent action against a different party, as here, the appellate court in *Speyer* reasoned that "it is clear that an appellate court's refusal to rest its affirmance on a certain finding is often indicative of an infirmity in the finding" and that binding a party to a ground not relied upon on appeal would deprive the party of his statutory right to an appeal. *Id.*[8] If the contrary rule were adopted, appellate court rulings inadvertently could make questionable lower court findings *res judicata. Id.*[9]

The *Speyer* court aligned itself with the majority view that "an appeal creates a clean slate, so to speak, for purposes of *res judicata,* upon which the appellate court's grounds for decision are inscribed." The Second Re-

8. Without involving ourselves in the intricacies of Pennsylvania probate jurisdiction, it appears that the intermediate appellate court's reasoning in the present case may not be persuasive on at least one factual point. The passage addressing whether the landlord had requested a ruling on the merits of the lease claim is as follows:

[A]ppellant [did not] merely file a request that the orphans' court division postpone distribution pending the resolution of the District of Columbia action. Rather, appellant filed a claim against the Estate. Furthermore, at the time when appellant filed its claim against the Estate, no litigation was pending in the District of Columbia. For the foregoing reasons, the orphans' court division did not abuse its discretion in concluding that appellant had presented a claim pursuant to 20 Pa.C.S.A. §§ 3386 and 3525 [sic—there is no such section] ....

The only relevant filing that the landlord had made in Pennsylvania before commencing the instant action in Superior Court in the District of Columbia was on a single page form addressed to the Clerk of the Orphans' Court Division which had to be timely filed in order to preserve claims against real property in the Schmidt estate pursuant to § 3532(b)(2). *See supra* at 1081 and *ante* at n. 13. We note that when the U.S. District Court rejected the Schmidt estate's executrix's argument that the declaratory judgment action she had filed against the landlord should be remanded to state court, it stated—contrary to the conclusion of the Orphan's Court and Superi-

or Court—that "[a] claim pursuant to § 3532(b)(2) does not initiate a judicial proceeding, but merely preserves an asserted interest against real property." An opinion by the Pennsylvania Supreme Court on the issue would, of course, be controlling on a question of state law over the federal court's interpretation; but we have no such opinion here. Therefore, in the present case the conflicting opinions of the lower state courts and the federal district court on the legal consequences of the landlord's § 3532(b)(2) filing provide some reason to believe that the Pennsylvania Supreme Court's summary affirmance without adopting the opinion below might well be "indicative of an infirmity in the [lower court's] finding." *Speyer, supra,* 295 A.2d at 146.

9. The majority clarifies that because *Speyer* involved a subsequent action against a non-party, the court's use of the term *res judicata* refers not to claim preclusion but to collateral estoppel. As noted earlier, claim preclusion applies only to a second action between the same parties; collateral estoppel to actually litigated issues that are the same in a subsequent as in a previous action. As also noted earlier, in this case the distinction is without practical difference because in order to apply principles of claim preclusion to bar Schmidt's partners, one must first establish that the issue previously adjudicated is one as to which Schmidt and the partners are in privity. Therefore, the *Speyer* ruling is applicable to this case.

statement of Judgments [10] addresses how to determine whether an issue has been decided, for preclusion purposes, in the context of appellate decisions from lower court rulings setting out different bases for decisions:

> If the judgment of the court of first instance was based on a determination of two issues, either of which standing independently would be sufficient to support the result, and the appellate court upholds both of these determinations as sufficient, and accordingly affirms the judgment, the judgment is conclusive as to both determinations....
>
> If the appellate court upholds one of these determinations as sufficient but not the other, and accordingly affirms the judgment, the judgment is conclusive as to the first determination.
>
> If the appellate court upholds one of these determinations as sufficient and refuses to consider whether or not the other is sufficient and accordingly affirms the judgment, the judgment is conclusive as to the first determination.

RESTATEMENT (SECOND) OF JUDGMENTS § 27 cmt. o (1982).

In the present case, we are faced not with a higher court's rejection or refusal to consider a basis for the lower court's ruling, but with a bare affirmance by the Pennsylvania Supreme Court, without opinion. Faced with this judicial silence, we simply do not know the basis for the Pennsylvania Supreme Court's affirmance. The majority concludes, however, that the Supreme Court must have affirmed the substance of the lower court's opinion, not merely its judgment. That conclusion is at odds with Pennsylvania law that an appellate court considers, and either affirms or reverses, judgments not opinions.

See *Hader v. Coplay Cement Mfg. Co.*, 410 Pa. 139, 189 A.2d 271, 274 (1963) ("Upon appellate review we are not bound by the reason or reasons advanced by the court below in support of a judgment or order for it is the judgment or order itself which is the subject of review."). There is no indication whatsoever from the Pennsylvania Supreme Court that it intended to adopt any of the lower courts' varying opinions. Although we know the basis for two of the lower courts' orders, we know nothing of the reason behind the Supreme Court's affirmance. The Orphan's Court ruled on the merits of the claim and denied it; the Superior Court decided only that the Orphan's Court had authority to address the landlord's claim, but did not reach the merits of the claim. We also know that the landlord maintained at all levels up to the Supreme Court,[11] that the court had discretion pursuant to § 3389 and the factors outlined in *In re Estate of Mellon, supra,* to either defer or allow final distribution of the estate after taking into account the pendency of the landlord's claim in another forum. Thus, the Pennsylvania Supreme Court could have affirmed the lower court's judgment on *either* the probate court's reasoning that the lease claim was presented to it and properly denied, *or* on the second alternative ground, the Superior Court's reasoning, that the probate court had jurisdiction to hear the claim on the merits but that the landlord had waived its right to present the claim on the merits, *or* on the third alternative ground, based on the landlord's argument, that even if the claim was not before the probate court, it was not an abuse of discretion to refuse to further delay distribution of the Schmidt estate notwithstanding that the claim was pending in another forum.[12] Any of these grounds would sustain

---

10. *Speyer* cited to the First Restatement of Judgments (1942) to the same effect:

 According to the Restatement of Judgments, "Where the trial court bases [a] judgment upon two alternative grounds, and an appellate court affirms the judgment solely on one of the grounds, the judgment is not conclusive in a subsequent action in which the other ground is in issue." Section 68, comment n (1942). To the same effect is § 69, comment b. *See* Scott, Collateral Estoppel by Judgment, 56 HARV. L.REV. 1, 15 (1942). A similar rule would undoubtedly apply in the case of an appellate

court's affirmance of a decision on a ground suggested by itself, after passing over the trial court's premise.
*Speyer, supra,* 295 A.2d at 146.

11. The record does not reveal the question presented to the Pennsylvania Supreme Court upon which it decided to grant review.

12. An appellate court may affirm on a ground different from that relied upon by the lower court. *See, e.g., In re Estate of Prynn*, 455 Pa. 192, 315 A.2d 265, 267 & n. 9 (1974); *Brew v.*

the lower court's judgment, which was to foreclose the landlord's claim against the Schmidt estate. "[A] correct decision will be sustained if it can be sustained for any reason whatsoever; in other words we will not reverse in such a case even though the reasons given by the court below to sustain its decision was [sic] erroneous [citing cases]." *Hader, supra,* 189 A.2d at 274–75 (quoting *Sherwood v. Elgart,* 383 Pa. 110, 117 A.2d 899, 901–02 (1955)). Of the possible grounds that could sustain the lower court's judgment, only one would constitute a holding by the Pennsylvania Supreme Court relevant to the issue in the present action with respect to Schmidt's partners, that the landlord's claim under the lease was denied on the merits. *See Stevenson, supra,* 208 A.2d at 788 ("A final valid judgment *upon the merits* by a court of competent jurisdiction bars any future suit between the same parties *or their privies* on the same cause of action.") (first emphasis added). Clearly, there would be no preclusive effect against Schmidt's partners if the Pennsylvania Supreme Court had expressly ruled against the landlord's claim, not on the merits, but because it considered that

the estate should be distributed without delay. RESTATEMENT (SECOND) OF JUDGMENTS § 51(1)(b) (1982). Simply put, unless we know that the Pennsylvania Supreme Court denied the landlord's lease claim against Schmidt on the merits, we cannot determine whether Schmidt's partners are privies for the purpose of applying either *res judicata* or collateral estoppel. The question before us is whether the "ultimate and controlling issues [in the present litigation] have been decided in a prior proceeding." *Stevenson, supra,* 208 A.2d at 788.

The Pennsylvania Supreme Court has said that where the grounds for the decision asserted to have preclusive effect cannot be ascertained and it "would be pure speculation [to identify the issue decided,] . . . we will not apply the doctrines of res judicata or collateral estoppel." *Safeguard Mut. Ins. Co., supra,* 345 A.2d at 669–70.[13] It is entirely possible, as the majority states, that the Supreme Court of Pennsylvania affirmed the lower court's judgment· because it agreed with denial of the landlord's claim against the Schmidt estate on the merits. It is also

*Hastings,* 206 Pa. 155, 55 A. 922, 925 (1903) ("[A]s the decree is right, the reasons work no material injury to anybody; we pass them over, therefore, as harmless, and affirm [the] decree."). For example, the Pennsylvania Supreme Court has affirmed an order on the alternative ground that the lower court did not abuse its discretion, where, although the lower court had concluded incorrectly that it had *no* discretion in the matter, it had also found that the appellant had shown no legally sufficient reason for an exercise of discretion in its favor. *See E.J. McAleer & Co. v. Iceland Prods.,* 475 Pa. 610, 381 A.2d 441, 443 & n. 4, 444 (1977). Similarly, in the present case, in striking the landlord's withdrawal of its claim, the probate court found that the landlord's claim should have been presented to it for trial. Under *In re Estate of Mellon, supra,* such a finding would justify decreeing a distribution without allowance for the landlord's claim, thus affording alternative grounds for affirming the probate court's judgment. The intermediate appellate court in the Schmidt probate proceeding applied the rule permitting affirmance on an alternative ground stating that "[w]e affirm the order of the orphan's court division rather than the opinion in support thereof."

**13.** The majority's attempt to distinguish *Safeguard Mut. Ins. Co., supra,* as involving the "opposite order of events," *ante* at 1075, is unavailing. In *Safeguard,* the Pennsylvania Supreme

Court refused to give preclusive effect to the denial of a preliminary injunction by a trial court in a prior proceeding, on a subsequent proceeding also seeking a preliminary injunction between the same parties, but on different grounds. Among other things, the court noted that because the trial court in the earlier case "did not give an opinion explaining [its] ruling" the appellant in the subsequent proceeding could not "claim that [the court] decided the case on the merits." *Id.* 345 A.2d at 669. That the court in *Safeguard* looked at the trial court's ruling in the previous action is not a controlling difference because the trial court's judgment appears as the only judgment in the previous action; there is no indication that a higher court affirmed. The point of *Safeguard* is that speculation is not permissible. *Id.* at 670. In this case, because the Orphan's Court judgment was appealed and eventually affirmed by the Pennsylvania Supreme Court, it is that judgment—not that of the Orphan's Court or the Superior Court—to which we must look. *Speyer, supra,* 295 A.2d at 146. Therefore, as in *Safeguard,* where the Pennsylvania Supreme Court refused to give preclusive effect to the trial court's judgment without opinion in a previous proceeding, application of *Safeguard* to this case requires that we similarly refuse to give preclusive effect to the Pennsylvania Supreme Court's affirmance without opinion, because to do otherwise would be to indulge in impermissible speculation.

possible, however, that it did not.[14] Riding on our interpretation of that uncertainty in the Supreme Court's affirmance in the Schmidt estate case is the viability of the landlord's claims against fifty of Schmidt's partners in the present action.[15] The tenants have not met their burden of persuading us that the uncertainty should be resolved in their favor because they have not presented us with evidence that application of *res judicata* in this case would not be speculative. *See* RESTATEMENT (SECOND) JUDGMENTS § 27, cmt. f (1982) ("The party contending that an issue has been conclusively litigated and determined in a prior action has the burden of proving that contention.").

I disagree with the majority's reliance on *Commonwealth v. Hilliard,* 3 Pa.Cmwlth. 560, 284 A.2d 326 (1971), for the proposition that *res judicata* applies even though the basis for the Supreme Court's affirmance may be unknown. As *Hilliard* makes clear, that holding applies as "between the parties in this case." *Id.* 284 A.2d at 327. That means only that the landlord's claim against the Schmidt estate, the same parties to the probate action, is barred. Here, however, Schmidt's partners were not parties to the Schmidt estate proceeding. For the Schmidt estate judgment to have preclusive effect with respect to non-parties, such as Schmidt's partners, on the ground that they are in privity, one must first determine whether claim preclusion applies because they are privies of Schmidt *with reference to the litigated matter* or, what amounts to the same thing in this context, whether collateral estoppel should preclude the landlord from relitigating the *same issue* against Schmidt's partners that was litigated and decided in the Pennsylvania probate proceeding.

As under Pennsylvania law we are not free to speculate upon the ground on which the Pennsylvania Supreme Court may have affirmed the order of the appellate court, the statements of the various lower courts in Pennsylvania characterizing what the landlord presented to the probate court for decision and denying the landlord's claim under the lease do not preclude the landlord's present actions against third parties filed in the Superior Court of the District of Columbia. I would reverse and remand the trial court's dismissal of all the claims except the one against Schmidt's estate.

---

14. To bring the point closer to home, if this court were to affirm a trial court ruling without opinion, it would be pure speculation to conclude that our bare affirmance meant the trial court did not err. As is well known, we will not reverse, even if there is trial court error, unless the error has affected "substantial rights of the parties." D.C.Code § 11–721(e) (1995).

15. "[W]hen the amount in controversy in the subsequent action far exceeds that involved in the initial action, unyielding application of estoppel doctrine may operate unfairly against the party who is precluded from relitigating an issue." RESTATEMENT (SECOND) OF JUDGMENTS, Introductory Note to Title E—Issue Preclusion (1982).